**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| MARK MEADOR, | § | |
| | § | |
| Plaintiff | § | |
| v. | § | CIVIL ACTION NO. 5:22-CV-00043-RWS-JBB |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMM'R OF SOC. SEC., | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

Before the Court is Plaintiff Mark Meador's Objections to the Magistrate Judge's Report and Recommendation. Docket No. 17. The Magistrate Judge's Report and Recommendation contains proposed findings of fact and recommends the Social Security Commissioner's decision be affirmed. Docket No. 16 at 33. The Court herein considers Plaintiff's objections and conducts a *de novo* review of the Magistrate Judge's objected-to findings and conclusions.

## BACKGROUND

### I.    Social Security Decision and Appeal

On August 6, 2019, Plaintiff protectively filed an application for a period of disability and disability insurance benefits as well as an application for supplemental security income benefits, claiming disability beginning September 1, 2018, due to manic depressive, schizoaffective disorder, Bipolar I, Hepatitis C, high blood pressure, shortness of breath, and arthritis. Docket No. 9, Transcript [hereinafter Tr.] at 190–96, 244. The Commissioner denied Plaintiff's applications initially and on reconsideration. *Id.* at 12. Plaintiff subsequently requested a hearing, which the Administrative Law Judge ("ALJ") held on September 10, 2020. *Id.* at 30–54. After reviewing the evidence and hearing testimony, the ALJ issued a decision on November 1, 2021, finding Plaintiff

was not disabled under the Social Security Act. *Id.* at 9–24. On February 28, 2022, the Appeals Council denied review of the ALJ's decision (*Id.* at 1–6), making the ALJ's November 1, 2021 decision the final decision for purposes of this Court's review pursuant to 42 U.S.C. § 405(g). Plaintiff filed the above-captioned case, requesting this Court reverse the Commissioner's decision, or in the alternative, remand the case for further administrative proceedings. Docket No. 1 at 3–4.

## II.       Report and Recommendation

This case was referred to United States Magistrate Judge J. Boone Baxter pursuant to 28 U.S.C. § 636. On August 2, 2023, the Magistrate Judge issued a 34-page Report, recommending the above-captioned social security cause of action be affirmed. Docket No. 16, Report and Recommendation [hereinafter R&R]. In the R&R, the Magistrate Judge set forth in detail the medical evidence of record, highlighting, among other things, the following relevant medical opinions regarding Plaintiff's mental impairments. *Id.* at 2–11, 23–25. The record indicates Plaintiff received thirty-seven counseling sessions from Community Healthcore between the dates of July 24, 2019, and July 6, 2021. *Id.* at 7. Plaintiff's referral indicated a history of schizophrenia, and Plaintiff also reported additional symptoms of paranoia, anxiety, isolation, difficulty concentrating, anger, aggression, and mood swings. *Id.* at 7–8. Plaintiff stated the relevant background for his mental health issues were multiple instances of sexual molestation during adolescence and a failed suicide attempt in 1981 via gunshot. Tr. at 558. However, throughout that timeframe, Plaintiff commented on the effectiveness of his medicine, stating "my medicine makes a huge difference" and "the medication helps me concentrate better." *Id.* at 561–62. At his August 7, 2019 appointment, Plaintiff was smiling and appeared to be in good spirits. *Id.* at 563. Plaintiff was positive, stating "you guys are efficient I appreciate your help." *Id.* at 563.

Plaintiff indicated on September 25, 2019, that he was starting to get increasingly stressed about his financial situation. Tr. at 569. In response, Plaintiff was taught safe coping strategies to better manage his mood relating to his stress. *Id.* Plaintiff indicated the stress persisted through his October 2, 2019, and October 9, 2019 sessions. *Id.* at 690–91. However, Plaintiff was otherwise "smiling and well-groomed" for both sessions. *Id.* Plaintiff's mood steadily improved through his sessions, with him stating as follows: "things are good since I got my medicine" (October 30, 2019); "right now I am not anxious or having any problems" (October 30, 2019); and "my medicine makes a world of difference, my life is so much better than it was." (November 20, 2019). *Id.* at 695–700.

In a December 11, 2019 Mental Treating Source Statement from Diana Thomas, M.S., QNHP II, counselor Thomas found Plaintiff had marked and extreme limitations as follows:

A. Understanding and Memory:
Understand and remember very short, simple instructions: **<u>Marked</u>**

B. Concentration and Persistence:
Maintain attention and concentration for extended periods: **<u>Extreme</u>**

Sustain an ordinary routine without special supervision: **<u>Marked</u>**

Complex a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods: **<u>Marked</u>**

C. Social Interaction:
Interact appropriately with the general public: **<u>Extreme</u>**

Ask simple questions or request assistance: **<u>Marked</u>**

Accept instructions and respond appropriately to criticism from supervisors: **<u>Extreme</u>**

Get along with coworkers or peers without distracting them or exhibiting behavioral extremes: **<u>Extreme</u>**

Maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness: **<u>Extreme</u>**

D. Adaptation
Ability to respond appropriately to change in the work setting: **<u>Extreme</u>**

Ability to be aware of normal hazards and take appropriate precautions: **<u>Marked</u>**

Ability to travel in unfamiliar places or use public transportation: **<u>Extreme</u>**

Ability to set realistic goals or make realistic plans independently of others: **<u>Extreme</u>**

On the average, how often do you anticipate that your patient's impairments or treatment would cause your patient to be absent from work? **more than four days per month**

Remarks on above or other functional limitations:
**Ongoing symptoms moderately impair social and occupational functioning.**

Tr. at 608–09 (emphasis added) (representing extreme and marked answers on form but omitting some other less severe answers).

Plaintiff's counseling sessions through the majority of 2020 were largely unremarkable with little notation about his mental state. *Id.* at 875–83. Plaintiff indicated that on February 22, 2021, his mood had improved such that he could tolerate outside setbacks, stating as follows: "I'm doing well right now. I'm not happy about the snowstorm we had because I haven't had water in a week, but other than that, things are pretty good." *Id.* at 992–93. This pattern of improved behavior was seen throughout subsequent sessions with no notations of anxiety or depression until his last session on July 6, 2021. *Id.* at 1044–45. Plaintiff indicated in his last session that he was sometimes "real anxious," and he expressed a desire to have his medications changed again. *Id.* at 1044.

Shortly before that last counseling session, Plaintiff had a psychological evaluation by James P. David, Psy.D., on June 30, 2021. Tr. at 1013–23. Plaintiff alleged major depressive disorder, bipolar, and schizoaffective disorder. *Id.* at 1013. Plaintiff supported these conditions by stating, "they are going to change my medication here soon because I've been hearing things and

I don't like being around anyone because there are always people talking about me. I find it hard to get along with anyone. I don't get along with my family. I always feel like something's going on." *Id.* at 1013–14. Plaintiff reported feeling "internally distracted and forgetful," and he described anger, irritability, and paranoia which disrupted all of his relationships. *Id.* at 1014.

In the mental status examination, Plaintiff's thought processes were "generally logical, coherent and relevant without overt signs of major thought disorder, but some reported history of paranoia and hallucinations." Tr. at 1015. Plaintiff reported auditory hallucinations, a history of suicidal thinking since childhood, and one prior serious suicide attempt. *Id.* at 1016. Plaintiff presented with depressed mood and dysthymic affect with low average intelligence, but he was able to calculate mental math accurately and appeared to have some limited insight. *Id.* After testing, Plaintiff scored average in quantitative reasoning, borderline delayed for nonverbal IQ and working memory, and low average in all other areas. *Id.* at 1017.

Plaintiff was diagnosed with schizoaffective disorder, bipolar type; post-traumatic stress disorder; severe cocaine use disorder in remission three years; panic disorder with agoraphobia; and specific learning disorder with impairment in written language. Tr. at 1018. Dr. David noted Plaintiff's symptoms were "quite severe, persistent, and have had only limited response to medication management." *Id.* at 1019. According to Dr. David, Plaintiff's level of paranoia and psychosis severely impair him in any work environment, noting Plaintiff rarely left the house due to panic and agoraphobia. *Id.* Regarding functional capacity, Dr. David opined Plaintiff had moderate impairment in his ability to understand, carry out, and remember instructions; moderate to severe impairment in his ability to sustain concentration and persist in work-related activities at a reasonable pace; and a severe impairment in his ability to (1) maintain effective social interaction

on a consistent and independent basis with supervisors, coworkers and the public and (2) deal with normal pressure in a competitive work setting. *Id.*

Dr. David completed a Medical Source Statement of Ability to do Work Related Activities (Mental) that showed marked limitations in Plaintiff's ability to: (1) understand and remember computer instructions; (2) carry out complex instructions; (3) make judgments on complex work-related decisions; (4) interact appropriately with the public and co-workers; and (5) respond appropriately to usual work situations and changes in a routine work setting. Tr. at 1020–21. Dr. David opined Plaintiff has an extreme limitation in his ability to interact appropriately with supervisors. *Id.* at 1021. According to Dr. David, Plaintiff's ongoing psychosis/paranoia impairs his judgment; he scores low on working memory and has a hard time following through on complex tasks; he now shows signs of agoraphobia and panic attacks; and he cannot tolerate working with others. *Id.* at 1020–21.

After summarizing the medical evidence of record, the Magistrate Judge summarized the testimony from the hearing before the ALJ. R&R at 11–13. Among other things, Plaintiff testified he is scatter-brained and has anxiety, along with trouble paying attention, concentrating, and focusing. Tr. at 40–41. Plaintiff also stated he has a "real hot temper," noting his extended amount of time in prison. *Id.* at 42. Plaintiff stated he cannot shake the feeling that everyone is trying to "find the worst in [him]" or "wear [him] down," especially considering his past. *Id.* at 42.

After summarizing the testimony of the vocational expert,[1] the Magistrate Judge set out the ALJ's application of the five-step sequential evaluation process. R&R at 13–16. Turning to the

---

[1] The vocational expert described Plaintiff's previous work experience as a barber as light exertional level and an SVP of 6. Tr. at 48–49. The ALJ then presented the following hypothetical to the vocational expert:

Let's assume a hypothetical individual of the claimant's age, education and with

analysis, the Magistrate Judge noted Plaintiff identifies the following specific issues on appeal: (1) whether the ALJ erred at step three in evaluating whether Plaintiff meets the criteria of Listings 12.03, 12.04, 12.06, 12.07, 12.08, and 12.15; (2) whether the ALJ's residual functional capacity assessment is supported by substantial evidence; and (3) whether the ALJ erred in evaluating the opinions of consulting examiner, James Davis, Psy.D., and treating source, Diane Thomas, M.S. *Id*. at 18 (citing Docket No. 13 at 1).

The Magistrate Judge did not find, as urged by Plaintiff in his first claim of error, that the ALJ erred at step three. *Id*. at 18–27. Specifically, the Magistrate Judge found Plaintiff has not established that he satisfies all of the criteria for a mental listing, including Listings 12.03, 12.04, 12.06, 12.07, 12.08, and 12.15. *Id.* at 27. Even if there was an error at step three, the Magistrate Judge noted any such error is harmless because Plaintiff cannot show the requisite functional loss. *Id.* The Magistrate Judge then considered the ALJ's residual functional capacity analysis in conjunction with the harmless error analysis at step three and also in conjunction with Plaintiff's

---

the work history just described. Further assume the individual can perform work at all exertion levels but with the following non-exertional limitations. The individual can understand, remember, and carry out detailed non-complex instruction. The individual is limited to occasional interaction with supervisors. Within these parameters, would the individual be able to perform the past work?

*Id.* at 49. The vocational expert stated there would be other jobs in the national economy the individual could perform *Id.* Specifically, the vocational expert listed kitchen helper, laundry laborer, and assembler motor vehicle. *Id.* at 49–50.

For the second hypothetical, the ALJ asked the vocational expert to further assume the hypothetical individual would be limited to the performance of simple routine tasks, simple work-related decision making, and occasional interaction with supervisors, coworkers, and the public. Tr. at 50. The vocational expert responded that the individual would not be able to perform his past work, but that the individual would still be able to perform jobs in the national economy. *Id.* at 50. The vocational expert listed battery stacker, laundry laborer, and assembler motor vehicle as three medium exertion jobs the individual could perform in the national economy. *Id.* at 50–51.

two additional claims of error.[2] In those two claims of error, Plaintiff contended the residual functional capacity assessment is in "direct conflict" with Dr. David's opinion that Plaintiff cannot "perform simple work-related decisions; and interact with supervisors, coworkers, and the public on an occasional basis." Docket No. 13 at 17. Relatedly, Plaintiff asserted the ALJ failed to properly consider the opinions of the treating counselor, Ms. Thomas. *Id.* at 18–21.

After setting forth the applicable law and the revised rules for evaluating medical opinions, *id.* at 27–30, the Magistrate Judge found Plaintiff's last two claims of error without merit:

> The ALJ found Ms. Thomas' December 11, 2019 opinions (namely, that Plaintiff had marked limitations in understanding and remembering very short instructions and asking simple questions and extreme limitations in accepting criticism, getting along with coworkers or peers, responding appropriately to changes in a work setting, and setting realistic goals or make realistic plans independently of others) had "only little persuasion." (Tr. 21). According to the ALJ, Ms. Thomas did not provide any documentation that supports her conclusion, and the conclusion was not consistent with counseling notes that show primarily normal mental status examinations (Tr. 21). Ms. Thomas' "checklist opinion" was not supported by any narrative explanation. *See* Dkt. No. 14 at 14-15. And, as noted by the ALJ, counseling notes have overwhelmingly revealed normal mental status examinations. *Id.* at 14 (citing Tr. 545, 658, 678, 724, 733, 775, 905, 951, 968-69, 1030).

> The ALJ also found unpersuasive the opinions of consultative examiner James David, Psy.D. . . .
>
> * * *
>
> In evaluating the medical opinion evidence and prior administrative findings, the ALJ properly noted that she would not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative findings or medical opinions (Tr. 21). Instead, the ALJ evaluated the medical opinions and prior administrative findings in accordance with the requirements of 20 CFR 404.1520c. The ALJ articulated her reasons for rejecting the testimony of Dr. David (Tr. 20). As is required by Section 404.1520c, the ALJ considered both the consistency and supportability of Dr. David's opinions in light of other medical opinions and evidence in the record, including the "generally positive" mental health records from Community Heathcore through April 2021 and the records which indicated that Plaintiff's medications had been beneficial and that Plaintiff's mood was stable.

---

[2] In her step three analysis of Listing 12.04, the ALJ did not address the opinions of Dr. David and Ms. Thomas. However, in her discussion of residual functional capacity, the ALJ addressed both opinions, finding them unpersuasive.

The ALJ recognized that while the evidence showed that Plaintiff subsequently experienced some challenges with anxiety, depression, and paranoia, Plaintiff's "condition has generally been controlled with medication, as he has noted on several occasions." (Tr. 20-21). Thus, the ALJ properly concluded that Dr. David's opinion of marked to extreme limitations was not consistent with the record as a whole.

In sum, the Court finds the ALJ's decision is supported by the substantial evidence and is the product of the application of proper legal standards. Even though the ALJ found unpersuasive the medical opinions of Dr. David and Diane Thomas, M.S., regarding Plaintiff's mental limitations, "[t]he [revised] regulations do not prohibit the ALJ from assessing the claimant's RFC based on other record evidence when he finds all medical opinions to be unpersuasive." *Gena R*., 2022 WL 16924116, at *11 (quoting *West v. Kijakazi*, No. H-21-2395, 2022 WL 4137297, at *6 (S.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, No. CV H-21-2395, 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 404.1545)). In such cases, the court's "inquiry focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id*. (quoting *Kalka v. Kijakazi*, No. 6:21-CV-00087, 2022 WL 866409, at *1 (E.D. Tex. Mar. 23, 2022) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)) (quotations removed in *Gena R*)).

Contrary to Plaintiff's assertion, substantial evidence supports the ALJ's residual functional capacity assessment. The State Agency consultants also performed the psychiatric review technique in evaluating Plaintiff's mental impairments. The ALJ took these findings into consideration and incorporated some of them, including that Plaintiff could understand, remember, and carry out simple, non-complex instructions, interact appropriately with others, and adequately respond to others. The ALJ found these opinions persuasive, noting Plaintiff is treated with medication and counseling (Tr. 22). Although Plaintiff has presented as anxious, mental status examinations have been rather normal and his symptoms had been stable with medications. The Court finds the ALJ properly assessed Plaintiff's residual functional capacity consistent with the evidence as a whole.

R&R at 30–33.

### III.   Plaintiff's Objections

Plaintiff objects to the Magistrate Judge's R&R. Rather than address the lengthy part of the R&R which considered the ALJ's analysis at step three, Plaintiff focuses on the part of the R&R which considered the ALJ's RFC analysis. As he did before the Magistrate Judge, Plaintiff identifies one evaluation from a treating source and one evaluation from a consultative examiner

that identify more severe limitations than found by the ALJ in his RFC assessment. Specifically, Plaintiff points out that in late June of 2021, around the end of his counseling sessions at Community Healthcore, he was seen by Dr. James David for a consultative examination, and Dr. David noted Plaintiff's symptoms were "quite severe, persistent, and have had only limited response to medication management." Docket No. 17 at 2 (emphasis removed). Further focusing on the December 2019 Mental Treating Source Statement from Diana Thomas, Plaintiff's counselor at Community Healthcore, Plaintiff asserts he cannot sustain full-time competitive employment. *Id.* at 2–5. According to Plaintiff, the ALJ's finding that Plaintiff can sustain full-time competitive employment appears to be inconsistent with Social Security Ruling ("SSR") 85-15 "which states that the basic mental demands of competitive, unskilled work includes the abilities, on a sustained basis, to understand, carry out, and remember simple instructions, respond appropriately to supervision, coworker, and unusual work situations, and deal with changes in a routine work setting." *Id.* at 5. Finally, Plaintiff contends the ALJ should have considered the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2 ("Grids") rule applying to sedentary work at step five of the sequential evaluation, *i.e.*, Rule 201.06, which would have directed a conclusion that Plaintiff is disabled. Consequently, Plaintiff seeks a reversal and remand for an award of benefits. *Id.* at 6-8.

## LEGAL STANDARD

A district court conducts a *de novo* review of any portion of a magistrate judge's report and recommendation to which any party files an objection. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). After conducting a *de novo* review, the district court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

## DISCUSSION—*DE NOVO* REVIEW

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, fifth, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

In his objections, Plaintiff focuses on the part of the R&R that considered whether the ALJ properly evaluated the opinions of a treating source and a consultative examiner in assessing Plaintiff's residual functional capacity and whether that residual functional capacity assessment is supported by substantial evidence. Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. *Scott C. P. v. Berryhill*, No. 3:18-CV-00036-D-BH, 2019 WL 1318365, at *11 (N.D. Tex. Feb. 26, 2019), *report and recommendation*

*adopted*, No. 3:18-CV-0036-D, 2019 WL 1315894 (N.D. Tex. Mar. 22, 2019) (citing 20 C.F.R. §

404.1545(a)(1)). It "is an assessment of an individual's ability to do sustained work-related

physical and mental activities in a work setting on a regular and continuing basis." *Scott*, 2019 WL

1318365, at *11 (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A.

July 2, 1996)). An individual's residual functional capacity should be based on all of the relevant

evidence in the case record, including opinions submitted by treating physicians or other

acceptable medical sources. *Id*. (citing 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL

374184, at *1). The ALJ "is responsible for assessing the medical evidence and determining the

claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

 Here, the ALJ determined that Plaintiff has the residual functional capacity for medium

work with certain mental limitations. Tr. at 17–22. Specifically, the ALJ found that Plaintiff can

perform simple, routine tasks; perform simple work-related decisions; and interact with

supervisors, coworkers, and the public on an occasional basis. Tr. at 17. As urged by the

Commissioner, and as found by the Magistrate Judge, the ALJ included mental restrictions in the

residual functional capacity assessment but found the overall record did not support

marked/extreme interpersonal limits as opined by Dr. David and Ms. Thomas. Additionally, the

Magistrate Judge agreed with the Commissioner that the ALJ properly considered the medical

opinions under the applicable regulatory guidelines.

 Initially, the Court notes that because Plaintiff filed his claims after March 27, 2017, 20

C.F.R. § 404.1520c governs. This regulation provides that "ALJs are no longer required to give

controlling weight to a treating physician's opinion." *Simon v. Kijakazi*, No. CV 22-3101, 2023

WL 2562754, at *7 (E.D. La. Mar. 17, 2023) (citation omitted). Instead, the ALJ must consider a

set of factors in determining "what weight, if any, to give a medical opinion." *Id.* Supportability

and consistency are the "most important factors" considered when determining the persuasiveness of a medical source's opinions or prior administrative medical findings. *Id.*

The supportability factor hinges on relevance; "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the [opinion or finding] will be." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)). Similarly, when assessing consistency, which is the other "most important" factor, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the [opinion or finding] will be." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Other factors in the persuasiveness analysis include the relationship with the claimant (length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and nature of examining relationship) and specialization. *Id.* (citation omitted). The "examining relationship" subfactor, instead of directing ALJs to give "more weight" to the medical opinion of an examining source than to that of a non-examiner, now advises that a medical source "may have a better understanding" of a claimant's impairments if that provider examines the claimant than if the medical source "only reviews evidence in [the claimant's] folder." *Id.* (citation omitted). This multi-factor analysis "enables courts to focus on 'the content of the evidence [rather] than on the source.'" *Id.* (citations omitted).

The ALJ found Ms. Thomas' December 11, 2019 opinions (namely, that Plaintiff had marked limitations in understanding and remembering very short instructions and asking simple questions and extreme limitations in accepting criticism, getting along with coworkers or peers, responding appropriately to changes in a work setting, and setting realistic goals or make realistic

plans independently of others) had "only little persuasion." Tr. at 21. According to the ALJ, Ms. Thomas did not provide any documentation that supports her conclusion, and the conclusion was not consistent with counseling notes that show primarily normal mental status examinations Tr. at 21. Ms. Thomas' "checklist opinion" was not supported by any narrative explanation. *See* Docket No. 14 at 14–15. And, as noted by the ALJ, counseling notes have overwhelmingly revealed normal mental status examinations. *Id*. at 14 (citing Tr. at 545, 658, 678, 724, 733, 775, 905, 951, 968–69, 1030).

The ALJ also found unpersuasive the opinions of consultative examiner James David, Psy.D. In discounting Dr. David's opinion, the ALJ noted as follows:

> On June 30, 2021, James David, PsyD, examined the claimant on a consultative basis. The claimant reported ongoing psychosis and paranoia, which Dr. David stated impacts the claimant's judgment. Testing revealed low working memory and the claimant had difficulty following through on more complex tasks. Dr. David further noted that the claimant was now showing signs of agoraphobia and panic attacks. Therefore, he noted that the claimant could not tolerate working with others. Dr. David described the claimant's symptoms as quite severe, persistent, and have had only limited response to medication management. Dr. David's report is supportive of disability; however, limitations do not appear consistent with the overall medical evidence of record. (Exhibit B18F) The overall record does not support marked/extreme interpersonal limits. Of note, the claimant has repeatedly indicated that his medication, particularly Seroquel, has been beneficial. He repeatedly noted stable mood and a desire to receive disability. Counseling notes have overwhelmingly revealed normal mental status examinations, as previously discussed. Accordingly, Dr. David's opinion is not persuasive.

Tr. at 20.

The Court agrees with the Magistrate Judge that the ALJ's consideration of the medical opinions is in accordance with 20 C.F.R. § 404.1520c. The ALJ articulated her reasons for rejecting the testimony of Dr. David. Tr. at 20. As is required by Section 404.1520c, the ALJ considered both the consistency and supportability of Dr. David's opinions in light of other medical opinions and evidence in the record, including the "generally positive" mental health records from Community Heathcore through April 2021 and the records which indicated that Plaintiff's

medications had been beneficial and that Plaintiff's mood was stable. The ALJ recognized that while the evidence showed that Plaintiff subsequently experienced some challenges with anxiety, depression, and paranoia, Plaintiff's "condition has generally been controlled with medication, as he has noted on several occasions." Tr. at 20–21. Thus, the ALJ properly concluded that Dr. David's opinion of marked to extreme limitations was not consistent with the record as a whole.

In his objections, Plaintiff criticizes any finding that his mental impairments were improved with medication because "that finding does not address the fact that Seroquel was no longer working and Plaintiff was seeking another medication to help with his symptoms." Docket No. 17 at 2. However, the counseling notes as a whole showed that medication was helping Plaintiff function. They also overwhelmingly revealed normal mental status examinations (Tr. at 545, 658, 678, 724, 733, 775, 905, 951, 968–69, 1030). Although Plaintiff continued to have some anxiety and mistrust when around others, the evidence shows overall that Plaintiff's mood was stable and he was doing well. Additionally, during the hearing, Plaintiff indicated that his regular therapy meetings with Community Healthcore had "really helped [him] a lot" and that they are "good people." Tr. at 38.

The Court further agrees with the Magistrate Judge that the ALJ's consideration of the medical opinions is supported by substantial evidence. Plaintiff's assertion that the ALJ's RFC determination lacks substantial evidence merely because she found the opinions of Dr. David and Ms. Thomas unpersuasive lacks merit. As noted by the Magistrate Judge, the State Agency consultants also performed the psychiatric review technique in evaluating Plaintiff's mental impairments. The ALJ took these findings into consideration and incorporated some of them, including that Plaintiff could understand, remember, and carry out simple, non-complex

instructions, interact appropriately with others, and adequately respond to others. The ALJ found these opinions persuasive, noting that Plaintiff is treated with medication and counseling. Tr. at 22.

Plaintiff asserts the ALJ failed to consider the "waxing and waning nature" of Plaintiff's mental impairments. Docket No. 17 at 3. Plaintiff does not point to any objective evidence showing that any of his impairments waxed and waned in their manifestation of disabling symptoms. *Powell v. Kijakazi*, No. 4:20-CV-591-ALM-KPJ, 2022 WL 4477334, at *5 (E.D. Tex. Aug. 3, 2022), *report and recommendation adopted*, No. 420CV00591ALMKPJ, 2022 WL 4474148 (E.D. Tex. Sept. 26, 2022) (stating that claimant's "conclusory assertion that his impairments were waxing and waning in nature is plainly insufficient").

The Court's role is not to "reweigh the evidence, try the issues de novo, or substitute [its] judgment for that of the [Commissioner]." *Simon*, 2023 WL 2562754, at *8 (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Rather, the Court is tasked with determining whether substantial evidence supports the ALJ's decision and whether she applied the correct legal standard. *Id.* (citation omitted). It is the ALJ's responsibility to determine an applicant's limitations and their application to the RFC. *Id.* (citation omitted). The fact that the Court might have reached a different conclusion is of no moment provided there is substantial evidence to support the ALJ's determination. *Id.* (citing *Dubose v. Mathews*, 545 F.2d 975, 977 (5th Cir. 1977)). As noted by the Magistrate Judge, courts may not reweigh the evidence or substitute their judgment for that of the Commissioner, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." R&R at 28 (citing *Jodie C. v. Berryhill,* Civil Action No. 3:18-CV-1687-S-BH, 2019 WL 3101689, at *16 (N.D. Tex. May 7, 2019), *report and recommendation adopted*, No. 3:18-CV-1687-S, 2019 WL 3081538 (N.D. Tex. July 15, 2019)). Here, the Court finds the ALJ properly assessed Plaintiff's residual

functional capacity consistent with the evidence as a whole, and substantial evidence supports the RFC determination.

Although raised for the first time in his objections,[3] the Court next considers Plaintiff's argument that the "grids" of the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, App. 2 direct a conclusion that he is disabled. At step five,[4] the ALJ noted (1) Plaintiff was born on March 8, 1960, and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date; (2) Plaintiff subsequently changed age category to closely approaching retirement age; (3) Plaintiff has at least a high school education; and (4) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Tr. at 22. The ALJ, considering Plaintiff's age, education, work experience, and residual functional capacity, found that jobs exist in significant numbers in the national economy that Plaintiff can perform. Specifically, the ALJ held as follows:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform

---

[3] In his opening brief, Plaintiff only mentioned the "grids" one time in passing at the conclusion of his second claim of error regarding the ALJ's RFC assessment and did not provide any substantive argument to warrant a discussion by the Magistrate Judge. *See* Docket No. 13 at 18 ("Plaintiff clearly met the GRIDS.").

[4] It is the Commissioner's burden at step five to show that a claimant is capable of performing other gainful employment in the national economy. *Lollar v. Kijakazi*, No. 3:20-CV-3298-BH, 2022 WL 4133309, at *5–6 (N.D. Tex. Sept. 12, 2022) (citing 20 C.F.R. § 404.1520(a)(4)(i)). Once the Commissioner finds that jobs in the national economy are available to a claimant, the burden of proof shifts back to the claimant to rebut this finding. *Id*. (citing *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990)). To establish that work exists for a claimant in significant numbers, an ALJ relies on the testimony of a vocational expert in response to hypothetical questions or other similar evidence, or on the Medical-Vocational Guidelines promulgated to guide this determination, often referred to as "the Grids." *Id*. (citations omitted).

all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.15 and Rule 203.07. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as followed.

- ***Laundry Laborer***—(DOT# 361.687-018, medium exertional level, specific vocational preparation level of 02-unskilled) with approximately 321,283 such jobs in the national economy;
- ***Assembler Motor Vehicles***—(DOT# 806.684-010, medium exertional level, specific vocational preparation level of 02-unskilled) with approximately 310,703 such jobs in the national economy;
- ***Battery Stacker***—(DOT# 727.687-030, medium exertional level, specific vocational preparation level of 02-unskilled) with approximately 67,196 such jobs in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

Tr. at 22–23.

In his objections, Plaintiff suggests he met Grid rule 201.06 because he was sixty years of age at the time of his hearing. *See* Docket No. 17 at 1, 7–8. Grid rule 201.06 directs a finding of

disabled for an individual of advanced age with an RFC for sedentary work. Plaintiff further suggests the sedentary grid rules should have been used to direct a finding of disability, rather than applying the medium grid rules as a framework for a disability decision. *See id.*

As noted above, the ALJ found that Plaintiff retained the residual functional capacity for medium work with certain mental limitations. The ALJ also classified Plaintiff as an individual closely approaching advanced age. As the Fifth Circuit has held repeatedly, the Commissioner may rely on the medical-vocational guidelines to establish that work exists for a claimant only if the guidelines' evidentiary underpinnings coincide exactly with the evidence of disability appearing in the record. *Sereseres v. Colvin*, No. 3-12-CV-00454-RFC, 2014 WL 2208137, at *5 (W.D. Tex. May 28, 2014) (citing *Lawler v. Heckler*, 761 F.2d 195, 197 (5th Cir.1985)). Because the ALJ's findings do not coincide with the corresponding criteria of Grid rule 201.06, that grid rule does not direct a conclusion of disabled or not disabled. *Workman v. Colvin*, No. 3-13-CV-00146-RFC, 2015 WL 3407248, at *5 (W.D. Tex. May 26, 2015). Therefore, Plaintiff is not entitled to relief on this claim.

Finally, Plaintiff argues the ALJ's finding at step five appears to be inconsistent with SSR 85-15, which provides guidance for determining the work capabilities of a claimant with solely nonexertional impairments. Docket No. 17 at 5. It provides: "[w]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work." *Simon*, 2023 WL 2562754, at *8 (quoting SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985)). Unskilled jobs "ordinarily require working primarily with objects, rather than data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain

the capacity to meet ... the basic mental demands of competitive, remunerative, unskilled work [including] the abilities ... to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.*

The Administration advises that, in order to perform unskilled work, the claimant must be able to sustain mental demands, including "the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* at *10 (citing SSR 85-15 at *4). Only a "substantial loss of ability to meet any of these" would severely limit the potential occupational base, justifying a finding of disability. *Id.* (citation omitted).

According to Plaintiff, when the ALJ modified her hypothetical to limit the hypothetical claimant to the performance of simple routine tasks, simple work-related decision-making and occasional interaction with supervisors, coworkers, and the public, the vocational expert testified the hypothetical claimant would not be able to perform Plaintiff's past work. Docket No. 17 at 5 (citing Tr. at 50). However, the vocational expert testified the hypothetical claimant would be able to perform the medium exertion jobs of battery stacker, laundry laborer, and assembler motor vehicle. Tr. at 50–51.

## CONCLUSION

After reviewing the transcript, the briefs of the parties, and the Report and Recommendation, the Court finds Plaintiff's objections are without merit. The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Accordingly, it is

**ORDERED** that Plaintiff's objections (Docket No. 17) are **OVERRULED**. It is further

**ORDERED** that the Report and Recommendation of the Magistrate Judge (Docket No.

16) is **ADOPTED** as the opinion of the District Court. It is further

      **ORDERED** that the above-captioned Social Security action is **AFFIRMED**. It is further

      **ORDERED** that any pending motions in the above-captioned case are **DENIED-AS-**

**MOOT**. A final judgment will be entered in this case in accordance with this Order.

      **So ORDERED and SIGNED this 21st day of September, 2023.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE